Judy A. **PERKINS** and Douglas K. **Perkins, Appellants,**

v.

**WAL–MART STORES, INC., STORE NO. 753, d/b/a Wal–Mart Discount City, Appellee.**

No. 93–213.

Supreme Court of Iowa.

Dec. 21, 1994.

John T. McCoy of Lindeman, Yagla, McCoy & Riley, Waterloo, for appellants.

Stephen J. Powell and Samuel C. Anderson of Swisher & Cohrt, Waterloo, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, ANDREASEN, and TERNUS, JJ.

LAVORATO, Justice.

This slip and fall case comes to us on further review from the court of appeals. Judy A. Perkins and her husband Douglas K. Perkins appeal from a district court order granting Wal–Mart Stores, Inc., Store No.

753, d/b/a Wal–Mart Discount City (Wal–Mart) summary judgment in the Perkins' negligence action. The court of appeals affirmed the district court conclusion that no genuine issue of material fact existed on the cause of Judy's fall. Because we disagree, we vacate the court of appeals decision, reverse the district court order, and remand for further proceedings.

Judy and her friend Pat Muchmore went shopping at Wal–Mart shortly before closing time. As the pair was making their way down a store aisle, Judy's feet suddenly slipped out from under her and she fell face first on the floor. Pat was in front of Judy and did not see her fall. No one saw Judy fall.

When Judy got up, she had sand or dirt particles on her hands. Pat saw the accumulation of dust and dirt on Judy's black outfit. Doug did too when Judy arrived home right after the accident. Judy called Wal–Mart about the accident the next day.

Judy filed a negligence action against Wal–Mart. Doug joined in the action with a loss of spousal consortium claim.

After answering, Wal–Mart moved for summary judgment. Judy and Doug resisted, but the district court granted the motion. Later, the district court denied Judy's and Doug's motion for reconsideration.

When reviewing the propriety of an order granting summary judgment, we follow certain well-established principles. First, summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to the judgment as a matter of law. Second, the moving party has the burden of showing the nonexistence of a material fact issue. Last, a nonmoving party generally cannot rest upon the nonmoving party's pleadings when the moving party has supported the motion. Nevertheless, summary judgment is still not proper if reasonable minds could draw different inferences and conclusions from the undisputed facts. In this respect, summary judgment is like a directed verdict: Every legitimate inference that reasonably can be deduced from the evidence should be given to the nonmoving party. If from these inferences reasonable minds can differ on how the issue should be decided, a fact question is generated. *Randol v. Roe Enters., Inc.*, 524 N.W.2d 414, 415 (Iowa 1994) (citation omitted).

We determine whether a genuine issue of material fact exists from the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Iowa R. Civ.P. 237.

In their petition, Judy and Doug alleged the following:

3. That, on or about November 11, 1989, at approximately 8:30 p.m., the Plaintiff, Judy A. Perkins, slipped and fell on slippery substances on the aisle floor of Defendant's retail department store. . . .

4. That Defendant, by and through its employees, was negligent in failing to remove such substances from the aisle floor and/or in failing to warn Plaintiff of such potential hazard.

5. That Defendant's negligence is a proximate cause of damages to Plaintiff. . . .

The district court explained its reasons for granting the summary judgment this way:

[T]he parties concede that there's no dispute as to the facts as narrated by the plaintiff, Judy Perkins. A fair analysis of her [deposition] testimony is that she is unable to establish any reason why she fell that is attributable to the defendant. It is true that her clothes were dusty and that she had sand in her hands after her fall. However, she could not say that she observed anything on the floor which caused her to fall. The plaintiff argues that the failure of the defendant to comply with [its] sweeping requirements is sufficient evidence to defeat the motion. However, the court believes that there should still be some showing that the debris that had not been swept up was the cause of the plaintiff, Judy Perkin's, fall.

. . . .

There is no factual dispute that the plaintiff is unable to say that she slipped on something or something caused her to fall, only that she fell. The court concludes that the mere fact that she fell and when she got up her clothes were dusty

and she had sand on the palms of her hands is not sufficient to defeat a motion for summary judgment.

In short, the court concluded Judy was unable to establish any reason for her fall that was attributable to Wal–Mart.

Judy and Doug maintain that (1) when the summary judgment record is viewed as a whole and (2) they are given every legitimate inference reasonably deducible from the evidence, they have generated a genuine issue of material fact on what caused Judy's fall. Our careful review of the record compels us to agree.

In her deposition, Judy responded to an extensive series of accident causation questions:

Q. Right in front of the Russell Stover display? A. Right there. I mean that exact spot.

Q. All right. A. And down I went.

Q. Down you went? A. Face first.

. . . .

Q. So, you know, I'll let Pat speak for herself, but to the best of your knowledge, from what you have observed, did you make any observations of anything unusual on the floor before you fell? A. No, none before.

Q. And then when you fell, tell me, I know it happens quickly, but tell me mechanically what happened; did your feet come out from under you or what happened? A. I went face first. I mean my feet—I don't know how to describe it without showing you, but I went flat. And my purse was under this side (indicating). And all I remember is I'm down there, and both of my wrists are like this (indicating). My ankles are pushed back like this (indicating), you see. My feet, you know. And I was just totally surprised.

. . . .

Q. But do you recall actually slipping before you went down? A. Just my feet going. And by the time I even thought about it I was face first.

. . . .

Q. Did you ever walk across any portion of the floor that you felt had some accumulation of some substance on it? A. I walked around the dirt here (indicating).

Q. Where was that located? A. Where they were pushing the broom.

Q. And that was on the main aisle? A. Yeah, it was—okay. Well, see, there are clothes or something over here (indicating). It's been so long. Anyway, there was some dirt that I walked around there. But that's the only time I noticed.

Q. All right. A. And that was just where the broom was.

. . . .

Q. But as you walked around the person pushing the broom, Judy, including that time—A. Yeah.

Q. —did you ever walk through any dirt that you recall? A. I didn't—I didn't see any, no.

. . . .

Q. So my question is, at any time when you were in Wal–Mart that night, from the time you walked in the front door until the time you fell, do you ever remember walking across any substance such as dirt? A. No.

Q. Or anything slippery or anything that shouldn't be there? A. Not that I could notice.

. . . .

Q. And what did you do after you got up? A. Brushed off all the—well, tried to brush off all the dirt. I was filthy.

Q. Where were you filthy? A. The front, where I had landed on the floor.

. . . .

Q. Was your coat dirty? A. Yes.

Q. All right. A. You could see that. It's like a tweed, and it had the leather trim, and you could see it on the black leather. And my hands, when I got up, you know, like when you're a little kid and you fall down, and you would get the sand ground into—

Q. The palms of your hand? A. Yeah.

Q. Okay. Judy, then when you got up and brushed yourself off, did you look down on the floor to see where you had fallen? A. I didn't really pay a—I was—I was so surprised that I fell, trying to get

clean, feeling very embarrassed, because at my age you feel stupid. And so truthfully, no.

Q. All right. A. All I know is I was filthy.

. . . .

Q. But you have told me twice now that you never made any observations of any dirt on the floor.—A. No.

Q. —in the area where you fell? A. No.

Q. Is that a true statement? A. Yes.

In their depositions, Pat and Doug corroborated Judy's statements about being covered with a sand or dirt substance.

Judy fell in the store on a Saturday. Wal–Mart had a written policy that the aisles were to be swept three times each day on weekdays and Saturdays. Despite this policy, two Wal–Mart employees in deposition testimony said that no one was assigned to sweep the floors during the hours the store was open on Saturdays. Employees on that day would only sweep or pick up debris they happened to see on the floor. One employee who was responsible for sweeping and mopping the floors in November 1989 testified that "probably nobody" cleaned the floors after her shift ended on the day before the accident. She also testified that sand tracked into the store would have been about the same color as the floor tile.

Our disposition here is largely controlled by a very recent slip and fall decision in which we held that the district court had erroneously discounted the probative value of circumstantial evidence on the cause of the fall. *Randol*, 524 N.W.2d at 417. In *Randol* the district court ruled the slip and fall plaintiff had failed to generate a fact issue on causation because she could not say that a drop off between the paved and gravel portion of a parking lot caused her fall. We disagreed, concluding that the plaintiff's "testimony as to where she was when she fell, the nature of the terrain where she fell, and how she fell generate a genuine issue of material fact on proximate cause." *Randol*, 524 N.W.2d at 417. All of this evidence, of course, was circumstantial.

What we said about circumstantial evidence bears repeating here:

This court has routinely observed that circumstantial evidence often may be equal or superior to direct evidence.

Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these, as do inferences from events. A jury tests a witness's credibility by using their experience in the past as to similar utterances of persons in a like position. That is precisely the same mental process as when they infer from an object what has been its past history, or from an event what must have preceded it.

*Id.* (citations omitted).

Judy and Doug are entitled to every legitimate inference reasonably deducible from the summary judgment record. From these, a reasonable mind could conclude that debris on Wal–Mart's floor caused Judy to fall. Judy's testimony as to how she fell, how startled she was that she had fallen, and the condition of her hands and clothing immediately after the fall are consistent with this conclusion.

Other circumstantial evidence supports the conclusion that debris caused Judy's fall. Despite a written policy to the contrary, the three-a-day sweeping was not done. In addition, someone was sweeping near the area where Judy fell. Both facts support a reasonable inference that the area where Judy fell was full of debris.

Sand was a part of this debris. Its color blended in with the color of the floor tile. This explains in part Judy's inability to detect what caused her to fall. Her surprise and embarrassment at falling would also tend to explain this inability: She was too surprised and embarrassed to even look.

We think this evidence generated a genuine issue of material fact on what caused Judy to fall. A jury could find that the

debris caused the fall, a condition directly attributable to Wal–Mart. The district court erred in reaching the opposite conclusion. We therefore vacate the court of appeals decision that affirmed the district court order granting the summary judgment motion. We reverse the district court order and remand for further proceedings.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT ORDER REVERSED; REMANDED.**